IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00537-D

| | |
|---|---|
| **Samantha Ann Battle,** <br><br> Plaintiff, <br><br> v. <br><br> **Nancy Berryhill**, Acting Commissioner of Social Security,[1] <br><br> Defendant. | **Memorandum & Recommendation** |

Plaintiff Samantha Ann Battle instituted this action on October 14, 2015, to challenge the denial of her application for social security income. Battle claims that the Administrative Law Judge ("ALJ") Katherine D. Wisz erred in determining that she had the residual functional capacity ("RFC") to perform sedentary work and incorrectly assessed her credibility. Both Battle and Defendant Nancy Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 15, 17.

After reviewing the parties' arguments, the court has determined that ALJ Wisz reached the appropriate decision. There is substantial evidence to support her RFC finding that Battle is capable of a reduced range of sedentary work and that she properly evaluated Battle's credibility. Therefore, the undersigned magistrate judge recommends that the court deny Battle's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.   Background**

On June 14, 2012, Battle protectively filed an application for disability benefits alleging a disability that began on January 1, 2010.[3] After her claim was denied at the initial level and upon reconsideration, Battle appeared at a hearing before an ALJ Wisz on June 6, 2014, to determine whether she was entitled to benefits. ALJ Wisz determined determined Battle was not entitled to benefits because she was not disabled. *Id*. at 50–59.

ALJ Wisz found that Battle had the following severe impairments: obesity, osteoarthritis in both knees, diabetes mellitus with neuropathies, benign paroxysmal positional vertigo ("vertigo"), and hypertension. *Id*. at 52. ALJ Wisz found that Battle's impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 53. ALJ Wisz then determined that Battle had the RFC to perform sedentary work with the following limitations: she must keep both feet elevated at less than 90 degrees whenever seated and she can have no exposure to vibration or unprotected heights. *Id*. ALJ Wisz concluded that Battle was unable to perform her past relevant work as a personal care attendant. *Id*. at 58. However, considering her age, education, work experience, and RFC, ALJ Wisz found that there were jobs that existed in significant numbers in the national economy that Battle was capable of performing. *Id*. at 58–59. These include: addresser, call-out operator, and charge account clerk. *Id*. at 59. Thus, ALJ Wisz found that Battle was not disabled. *Id*.

After unsuccessfully seeking review by the Appeals Council, Battle commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on October 14, 2015. D.E. 1.

---

[3] The relevant period at issue before ALJ Wisz was January 1, 2010, Battle's alleged onset date, through December 31, 2011, her date last insured. Tr. at 52.

II.     **Analysis**

    A.     **Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    B.     **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

3

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

The medical evidence during the relevant period and shortly thereafter reveals the following: on January 14, 2010, Battle saw Dr. Samuel Wesonga. Tr. at 350. Treatment notes reflect that her shortness of breath had resolved, her cardiac workup was unremarkable, and, aside from obesity, she had a normal physical exam. *Id.* A follow-up visit later that month noted that Battle presented as asymptomatic and pain-free. *Id*. at 348. Although she reported occasional chest pain, the exam was generally negative for other symptoms and she had no edema. *Id*. In March 2010, Battle reported that she exercised and jogged, and her exam was normal aside from obesity, with no edema in her extremities observed. *Id*. at 347. Providers advised Battle about diet and exercise. *Id*.

Examinations in April 2010 yielded generally normal findings, aside from obesity and increased urination frequency, and no edema. *Id*. at 345–46. June 2010 treatment notes observed that Battle did not fill a previous prescription because she could not afford it. *Id*. at 344. Examination showed "1+ pitting" leg edema and noted that her diabetes was well-controlled. *Id*. A visit the following month revealed no edema, weight gain, and Battle reported her diabetes was doing well. *Id*. at 343. In August 2010, treatment notes again remarked that Battle had not filled a previous prescription for weight-loos medication despite the fact that she had requested the prescription. *Id*. at 341. She had no edema and had not started exercising. *Id*.

In December 2010, Battle complained of dizziness and upper-respiratory symptoms. *Id*. at 334. Examination revealed no edema although she stated she had some pain in her left foot. *Id*.

4

She was prescribed antibiotics. *Id*. In April 2011, Battle reported a mild to moderate knot in her right foot. *Id*. at 333. An examination disclosed no edema but she had a bunion on her right great toe. *Id*. She was advised to monitor her blood sugar levels, exercise, and lose weight. She was given a prescription for thyroid medication which she has stopped taking. *Id*. A follow-up appointment in May 2011 revealed no edema and stable diabetes. *Id*. at 332.

Battle reported intermittent right knee pain in June 2011. *Id*. at 331. An exam showed no edema in her extremities and a stable knee joint with some crepitus but no effusion. *Id*. Providers recommended weight loss, exercise, and non-steroidal anti-inflammatory medication. *Id*. In October 2011, Battle reported right knee pain again. *Id*. at 327. Her examination yielded generally normal results, with no edema and no effusion in her right knee. *Id*. Battle received an orthopedic referral. *Id*. A follow-up exam showed trace edema in the right foot, +1 edema in the left foot, and slight edema in the knees. *Id*. at 325.

Later that month, Battle saw orthopedist Dr. Greig V. McAvoy for her right knee pain. *Id*. at 299. Treatment notes reflect an antalgic gait, mild knee warmth, soft tissue swelling, and mild effusion and tenderness above the knee. *Id*. Dr. McAvoy diagnosed Battle with degenerative joint disease in the right knee because her x-rays showed moderate to severe osteoarthritis and severe joint space narrowing in the medial an anterior compartments. *Id*. He gave Battle an injection to her knee of Kenalog and Xylocaine. *Id*.

Battle reported that the injection relieved her pain. *Id*. at 322. Treatment notes state that her cellulitis was improving, and that she had trace edema bilaterally, a full range of motion, and a steady gait. *Id*. Battle followed up with Dr. McAvoy in November 2011 and reported pain relief from the injection until she fell and re-aggravated her knee condition. *Id*. at 298. Dr.

McAvoy's treatment notes reveal a mildly antalgic gait with no swelling or effusion. *Id*. He opined that she may require a knee replacement in the future. *Id*.

Battle complained of sharp pains in her left arm in December 2011, and treatment notes reflect no cyanosis, edema, or clubbing, and that she ambulated without difficulty. *Id*. at 318. Her pain was attributed to a medication. *Id*.

At a January 2012 visit to Dr. McAvoy, Battle reported bilateral knee pain and left arm pain. *Id*. at 297. Dr. McAvoy observed a waddling gait and no swelling or effusion in the knees. He administered another injection. *Id*. Battle did not keep her appointment with Dr. McAvoy the following month. *Id*.

In June 2012, Battle saw her primary care provider for follow-up regarding her diabetes. *Id*. at 303. She reported that she was exercising daily. *Id*. Her diabetes was well-controlled. *Id*.

### D. Residual Functional Capacity

Battle first argues that ALJ Wisz erred in finding that she could perform sedentary work with additional limitations. She maintains that the evidence demonstrates that she would be unable to perform work at any exertional level. The Commissioner asserts, and the court agrees, that substantial evidence supports ALJ Wisz's determination that Battle is capable of a reduced range of sedentary work.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also

consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

In support of her argument that she is incapable of even a reduced range of sedentary work, Battle points to her history of severe medical impairments for which she has sought treatment. She also maintains that she had to stop working because her pain was too severe. She contends she is limited by swelling in her legs and feet, which prevents her from wearing shoes several times per week and requires her to elevate her feet for most of the day. She also argues that she can only sit or stand for 30 minutes, can only walk short distances, and must use a cane. She asserts that her daily complaints of neuropathy in her hands and feet are well-documented in the record. Battle asserts that these limitations preclude all employment.

ALJ Wisz noted Battle's many impairments and the medical evidence addressing these conditions. Tr. at 52–58. However, the mere presence, or diagnosis, of a condition is insufficient to establish disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... says nothing about the severity of the condition."). Moreover, it is a claimant's burden to establish how medically-documented impairments result in functional limitation. *See* 20 C.F.R. §§ 404.1512(c) & 416.912(c) (claimant's burden to establish his RFC by demonstrating how those impairments impact his functioning); *see also Plummer v. Astrue*, No. 5:11–cv–00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) ("[t]he claimant bears
7

the burden of providing evidence establishing the degree to which her impairments limit her RFC"), *adopted by*, 2012 WL 1858844 (May 22, 2102), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

As discussed more fully below, ALJ Wisz did not fully credit Battle's complaints of pain and did not adopt all of her self-reported limitations into the RFC finding. Instead, she found that the evidence supported an RFC for sedentary work with additional restrictions. This finding was supported by the record which established, for instance, that Battle drove up to four hours at a time and exercised despite her claims that she could only sit and stand for 30 minutes and walk short distances.

Nonetheless, ALJ Wisz's RFC addresses several of Battle's reported symptoms. ALJ Wisz noted that the RFC accounted for Battle's knee pain and lower extremity swelling by limiting her to sedentary work with an additional limitation that she could elevate her feet while seated. Tr. at 58. ALJ Wisz further remarked that the RFC for work at the sedentary level addressed the exacerbating effects of Battle's obesity and hypertension as well as early neuropathic symptoms in her feet. *Id*. Further, the restrictions limiting her exposure to vibrations and hazards reflects Battle's vertigo and foot neuropathies. *Id*.

Battle has not identified any additional limitations well-supported in the record that ALJ Wisz did not address. Finding that Battle's argument regarding the RFC determination lacks merit, the court should deny her claim on this issue.

### E. Credibility

Battle next contends that ALJ Wisz erred in assessing her credibility. Specifically, she argues that the objective medical evidence supports her statements concerning the limiting effects of her symptoms. The Commissioner argues that ALJ Wisz properly declined to fully

8

credit Battle's statements. The undersigned finds that ALJ Wisz did not err in her credibility determination.

There is a two-step process to determine whether a claimant is disabled by pain: (1) the ALJ must determine whether the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged;" (2) if so, the ALJ must evaluate the intensity and persistence of the claimant's pain or symptoms and the extent to which it affects the claimant's ability to work. 20 C.F.R. §§ 416.929(c)(2). In evaluating the second prong, the ALJ cannot require objective evidence of the pain itself. *Craig v. Chater,* 76 F.3d 585, 592–93 (4th Cir. 1996). However, objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of the claimant's pain. SSR 96–7p, 1996 WL 374186, at *6.[4] Moreover, the ALJ *must* consider it in evaluating the individual's statements. *Id.* The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

---

[4] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Although the more recent Ruling eliminated the term" credibility" noted that "subjective symptom evaluation is not an examination of an individual's character[]" and directed that the determination "contain specific reasons for the weight given to the individual's symptoms[.]" *Id*. Because SSR 96-7p was in effect at the time the ALJ's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley v. Colvin*, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

ALJ Wisz found that while her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Battle's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible [.]" Tr. at 55. ALJ Wisz then explained her finding. She noted that, during the relevant period, Battle's testimony was inconsistent to her reports to providers, their observations and findings. *Id.* Battle testified to shortness of breath and many episodes of vertigo. *Id*. The shortness of breath she experienced prior to her onset date had resolved, and she denied this symptom throughout the relevant time period. *Id*. While there was one reported episode of vertigo during the relevant period, Battle subsequently made no report and sometimes specifically denied vertigo symptoms like dizziness. *Id*. Treatment notes reflect no reports of knees buckling or falls. *Id*. While Battle also stated she experienced significantly-limiting foot neuropathies, examinations routinely disclosed no edema and that loss of sensation was either not present or minimal. *Id*. Moreover, Battle's reported work and daily living activities, including delivering newspapers, driving up to four hours each day, exercising, and caring for two young children, undermined her claims of disabling impairments. *Id*.

10

Battle asserts that her statements about her symptoms are credible because they are borne out by the objective medical evidence. She notes that she has diagnoses of obesity, osteoarthritis, diabetes mellitus with neuropathy, vertigo, and hypertension. Battle also points to x-rays indicating moderate to severe osteoarthritis in her knees with severe joint space narrowing in the medial an anterior compartments. She contends treatment provided her minimal relief. She also maintains that she had to leave her last job because of foot and leg pain. Battle asserts that she was unable to wear shoes several times a week due to swelling, and that diuretic medication caused her to experience incontinence. She testified that she has daily neuropathies in her feet and must elevate them for significant periods of the day.

The credibility finding is supported by substantial evidence. First, ALJ Wisz noted Battle's many conditions she identifies and found that they were severe impairments. *Id*. at 52. She found, however, that these impairments were not as limiting as Battle alleged. The medical record demonstrates a lack of significant complaints of foot neuropathy and examination showed either no sensory loss or only mild sensory loss. This is inconsistent with Battle's allegations that she experienced significant, daily neuropathy in her hands and feet. Treatment notes during the relevant time period also demonstrate a lack of appreciable edema in the lower extremities, which is contrary to Battle's statements of significant swelling that required her to elevate her feet for half the day. Battle reported that she drove up to four hours a day delivering newspapers undermined her statements that she could only sit for 30 minutes. Her statements to providers that she cares for two young children, played Wii, and exercised discredited her claims that she required a cane and that she could only walk short distanced. Additionally, her earlier complaints of shortness of breath had resolved. As noted above, ALJ Wisz's RFC determination accounted

11

Case 5:15-cv-00537-D   Document 20   Filed 01/24/17   Page 11 of 13

for several of Battle's reported symptoms. *Id*. at 58. In sum, such evidence demonstrated that Battle is more functional than she avers.

For these reasons, ALJ Wisz properly found that Battle was not fully credible and assigned little weight to her statements. *Id*. at 55. As Battle has only show disagreement, not error, with ALJ Wisz's evaluation of this evidence, her argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

## III. Conclusion

For the forgoing reasons, the court recommends that the court deny Battle's Motion for Judgment on the Pleadings (D.E. 15), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 17), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review**

**of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: January 24, 2017

                                                      */s/ Robert T. Numbers II*
                                                     ROBERT T. NUMBERS, II
                                                     UNITED STATES MAGISTRATE JUDGE